UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT LAPCZYNSKI,

        Plaintiff,                       Case No. 17-cv-10499

v.                                             Honorable Thomas L. Ludington

WAL-MART STORES INC.,

        Defendant.
_____/

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DISMISSING COMPLAINT**

On January 9, 2017, Plaintiff Robert Lapczynski filed a complaint in Alpena County Circuit Court naming Wal-Mart Stores, Inc., as the Defendant. ECF No. 1. On February 16, 2017, Wal-Mart removed this case. ECF No. 1. Plaintiff is suing to recover for damages he incurred after slipping and falling in a Wal-Mart store located in Alpena, Michigan, on January 13, 2016. On November 29, 2017, Defendant Wal-Mart filed a motion for summary judgment. ECF No. 15. For the reasons that follow, Wal-Mart's motion will be granted.

**I.**

**A.**

The parties agree on a general summary of what occurred on the evening of January 13, 2016.[1] Robert Lapczynski arrived at the Wal-Mart store around 6:30 p.m. Plaintiff Dep. at 13, ECF

---

[1] Plaintiff has submitted a copy of the surveillance footage of the day in question. ECF No. 25. The footage on the disc is consistent with the general sequence of events described by the parties. To the extent the footage contradicts a statement by the parties or clarifies a dispute between the parties, that fact will be noted.

No. 15, Ex. A. As might be expected for a January day in Michigan, the weather was bad.[2] The parking lot was covered in soft, melting snow. *Id.* at 14. Plaintiff parked in the first or second row of the parking lot, and then walked to the entrance. *Id.* at 15. Plaintiff does not recall if it was snowing or raining when he arrived, but he believed that snow had fallen earlier in the day. *Id.* at 15–16. Given the circumstances, Plaintiffs knew that customers were likely tracking snow and water into the store. *Id.* at 16.

The Alpena Wal-Mart store entrance is composed of two sets of sliding doors. *Id.* When Plaintiff passed through the first set of sliding doors, he noticed two rugs. *Id.* The first rug was completely saturated with water from foot traffic. *Id.* In his deposition, Plaintiff explained that "you could walk through it and it looked like a kid splashing in water." *Id.* The second rug was not as wet. *Id.* at 16–17. Although the first half of the second rug was as saturated as the first rug, the last six to eight feet was not covered in standing water. *Id.* at 17. As he entered, Plaintiff attempted to dry his feet on the driest part of the second rug. *Id.*

After passing through the second set of sliding doors, Plaintiff turned right and walked towards the pharmacy. *Id.* When he was less than ten feet from the pharmacy counter, Plaintiff slipped and fell. *Id.* at 17. Plaintiff testified at his deposition that the water which caused him to slip came from the floor, but he also admitted that his shoes were likely wet at the time. *Id.* at 23–24, 44.

**B.**

After Lapczynski fell, Joseph Bouchey, the store manager on duty at the time, arrived at the scene. Bouchey testified at his deposition that, when he arrived, he noticed that Lapczynski

---

[2] At his deposition, Plaintiff testified that he had been born and raised in Alpena, Michigan. *Id.* at 4–5. He acknowledged that he was used to snow and ice. Lapczynski further indicated that he was extremely familiar with the Alpena Wal-Mart, explaining that he visits the store approximately 25 days per month. *Id.* at 14.

had snow and slush melting off his shoes. Bouchey Dep. at 37, ECF No. 15, Ex. D. Bouchey also testified that Lapczynski's shoes had minimal tread. *Id.* at 38–39. Bouchey then prepared a Customer Incident Report. The Customer Incident Form contains a space for the customer to explain "in [their] own words, the events leading up to the incident." Cust. Incident Rep., ECF No. 15, Ex. B. At his deposition, Bouchey explained that Lapczynski "did not want to" fill out the report himself, and so Bouchey asked Lapczynski what happened and then Bouchey filled out the report himself. Bouchey Dep. at 41–42. Lapczynski read over the completed report, agreed that it was accurate, and signed it. *Id.* at 42.

The Customer Incident Report provides the following description: "Slipped on water from shoes in front of Pharmacy wearing Tennis Shoes[;] No Tread[;] Right Knee and Ankle." Cust. Incident Rep. The Report was signed by both Lapczynski and Bouchey. *Id.* At the deposition, Bouchey was questioned, at length, about whether Lapczynski had specifically said that his shoes had "no tread," or if Bouchey had added that fact based on his own observation.[3] Bouchey Dep. at 42–45. Bouchey repeatedly asserted that he would never add additional language to a customer incident report after the customer signs it. *Id.* at 45. However, Bouchey also acknowledged that the incident occurred too long ago for him to specifically remember whether Lapczynski told Bouchey that his shoes had no tread. *Id.* at 44.

Several Wal-Mart employees also provided witness statements. Bouchey wrote a witness statement of his own: "Customer had snow/slush on Bottom of Shoes he slipped in front of Pharmacy and Fell his tennis shoes were old and Little to NO Tread on them. He was Complaining

---

[3] Lapczynski now contends that the words "no tread" were written by a different pen. The copies provided to the Court are of middling quality, but the words at issue do not appear to be dramatically different in shape or color from the remainder of the written statement.

about his Ankle and Knee." Bouchey Statement, ECF No. 15, Ex. H. Brittany Miller, a Wal-Mart associate, provided the following statement:

> I observed a gentleman laying on the floor outside of pharmacy drop off window. I noticed on the ground a "skid" mark that had a little water in the shape of his shoe prints as if the water had come off of his shoes. There was mats down at the doors he had come in and a wet floor sign by the window of the pharmacy on the floor.

Miller Statement, ECF No. 15, Ex. F.

Angela Burns also provided a statement: "I do maintenance at Walmart & about a half hr before the fall I mopped all the wet spot in pharmacy that I saw. I used a dry mop we keep on hand in the [general merchandise] vestibule for wet spills on the front end." Burns Statement, ECF No. 15, Ex. G.

Lapczynski argues that the unsworn statements of Mr. Bouchey, Ms. Miller, and Ms. Burns should be disregarded because they are hearsay. The representations made in the unsworn statements are immaterial for the issues currently before the Court. The surveillance video footage corroborates much of the assertions (including that there were two mats placed at the entrance to the store where Lapczynski entered and that a wet floor sign had been placed on the ground less than ten feet from where Lapczynski fell). Bouchey was questioned about the factual representations made in his statement at his deposition, and so that testimony will be primarily relied upon. The only uncorroborated assertions found in the unsworn statements is the indication that Lapczynski slipped on water which came from his own shoes, not water tracked in by other people. An issue of fact exists on that point. But, as explained below, that issue of fact is not material to the legal issues currently framed.

## C.

The parties dispute the extent and scope of Wal-Mart's attempts to mitigate the hazard posed by melting snow. At his deposition, Bouchey was asked about Wal-Mart practices for

mitigating water hazards related to inclement weather. Bouchey Dep. at 8. He explained: "Snow and rain, we put mats out, we dry mop the floors, put cones out to make sure that people know there could be a possibility of water on the floor." *Id.* He went on to indicate that "[e]very associate" has a "duty" to "let somebody know so the mats could be put in place or fans to help dry floors" when "they see water on the floor or it's raining." *Id.* at 9.

According to Bouchey, the day in question "was snowy, rainy, just a nasty day." *Id.* at 10. For that reason, Wal-Mart employees were "dry mopping often." And, similarly, the store "had fans out and the mats and the cones." *Id.* Bouchey explained that sometimes, when one entrance is wetter than the other, maintenance will move the fans to the entrance more in need of drying. *Id.* at 17. The pictures of the doors where Lapczynski entered do not depict any fans, and Bouchey admitted that there may not have been any blowing at that entrance at the time of the incident. *Id.*

The parties agree that the area where Lapczynski slipped and fell had been dry mopped by a Wal-Mart employee approximately half an hour before the incident. Plaintiff's supplemental brief describes the surveillance footage as follows:

> Approximately 35 minutes prior to Plaintiff's entry into the store, a store employee is seen dry mopping the white tiled area near the entrance and in the area by the pharmacy where Plaintiff slipped and fell. The employee does not mop the brown tiled area closer to the entrance near the vestibule where water from entering patrons would have further accumulated, and then been tracked in.

Pl. Supp. Br. at 7, ECF No. 22.

After the pharmacy area was mopped but before Lapczynski entered the store, the surveillance footage shows 73 people entering the store and 23 of those people walking through the pharmacy area. *Id.* at 7. *See also* O'Rourke Aff., ECF No. 22, Ex. 5.

The parties also agree that Wal-Mart employees had set up several caution cones, though Lapczynski denies they provided adequate notice that the area where Lapczynski fell was slippery.

One caution cone was placed next to the doorway where Lapczynski entered the store. *See* GM Entrance Photos at 1, ECF No., 17, Ex. 1. That cone was obstructed on one side by the open door and on the other by a large crate. *Id.* The window which would have enabled customers to view the cone from the entryway appears to have been covered by advertisements. *Id.* Given the cone's location, a person entering the store would not have had an unobstructed line of sight to the cone unless they turned around and looked towards the doorway after entering.

Wal-Mart employees also placed an orange caution cone near the pharmacy counter where Lapczynski slipped. *See* Ex. D., ECF No. 15; Ex. K, ECF No. 15. The pharmacy counter in question involved several stations. One station, the closest to the entrance, is set approximately six feet closer to the edge of the building. *Id.* The remainder of the stations are in a line around the corner created by the six foot setback. *Id.* The caution cone was placed at the edge of that corner. *Id.* Given its placement, a person walking along the pharmacy counters towards the store entrance would not see the caution cone until they passed the corner (and even then it would be beside them, not directly in their line of vision). A person entering the store would not immediately see the caution cone because it was obstructed by a corner. However, once that person turned right to walk towards the pharmacy, he or she would see the cone directly in front of them with an entirely unobstructed line of sight. *Id.* That said, the caution cone was not placed directly in the walkway, and so a person walking towards the pharmacy from the entrance would see the cone but would not be forced to walk around it.[4]

---

[4] Two photos have been attached as appendices to this Opinion and Order. The first photo is a close-up of the caution cone in the pharmacy area. It depicts the placement of the cone in relation to the pharmacy counters. The photo was taken by an individual facing the same direction which Lapczynski would have been walking when he slipped. The second photo is a still from the surveillance footage. It shows Lapczynski in mid-fall. The second photo also depicts the caution cone in the pharmacy (directly in front of Lapczynski) and the entrance to the store.

Approximately ten minutes after Lapczynski fell, surveillance footage shows a Wal-Mart employee moving the first caution cone (which had been hidden between the entrance door and a crate) out into the middle of the entranceway. The new placement of the caution cone would have been clearly visible to all customers entering the store from the general merchandise vestibule. The cone that had already been placed in the pharmacy area was not moved.

**II.**

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

**III.**

Plaintiff is advancing a single count of negligence against Wal-Mart. Wal-Mart argues, and Lapczynski does not contest, that his claim sounds in premises liability, not ordinary negligence. In diversity cases like this one, federal courts "must apply the substantive law of the state in which the court sits." *Mill's Pride, Inc. v. Cont'l Ins. Co.*, 300 F.3d 701, 704 (6th Cir. 2002). Thus, this Court will apply Michigan's substantive laws, including Michigan's choice of law rules. *Id.* The parties agree that Michigan law governs. Accordingly, the question is whether, viewing the

evidence in a light most favorable to Lapczynski, there are genuine issues of material fact regarding his premises liability claim.

Michigan law provides that, "[i]n a premises liability action, a plaintiff must prove (1) that the defendant owed a duty to the plaintiff, (2) that the defendant breached the duty, (3) that the defendant's breach of the duty caused the plaintiff's injuries, and (4) that the plaintiff suffered damages." *Kennedy v. Great Atl. & Pac. Tea Co.*, 274 Mich. App. 710, 712 (2007).

"In general, a premises possessor owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Lugo v. Ameritech Corp.*, 464 Mich. 512, 516 (2001). "However, where the dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee." *Riddle v. McLouth Steel Prod. Corp.*, 440 Mich. 85, 96 (1992). In other words, "[a] premises possessor is generally not required to protect an invitee from open and obvious dangers." *Kennedy*, 274 Mich. App. at 713.[5]

Defendant argues that Lapczynski's suit should be dismissed for two reasons. First, Wal-Mart argues that it did not have actual or constructive notice of the dangerous condition. Second, Wal-Mart argues that the hazard which caused Lapczynski's injury was open and obvious. Both arguments will be addressed in turn.

**A.**

Wal-Mart argues that "there is no evidence that Wal-Mart had actual or constructive notice of the alleged wet spot that Plaintiff fell on." Mot. Summ. J. at 10. In support of that argument, Wal-Mart emphasizes that an employee "had mopped up all known wet spots in the pharmacy area

---

[5] The parties stipulate that Lapczynski was a business invitee.

just a half hour before Plaintiff fell" and argues that "the evidence strongly suggests that the wet spot was created by Plaintiff's own shoes." *Id.* at 10–11.

A storekeeper can be subject to liability based on dangerous conditions which exist in the store only if the storekeeper has actual or constructive knowledge of the unsafe condition. *Serinto v. Borman Food Stores*, 380 Mich. 637, 640 (1968) (citing *Carpenter v. Herpolsheimer's Co.*, 278 Mich. 697, 271 N.W. 575 (1937)). Constructive notice can be proven through evidence that the unsafe condition "'existed a sufficient length of time that [the storekeeper] should have knowledge of it.'" *Lowrey v. LMPS & LMPJ, Inc.*, 500 Mich. 1, 10 (2016) (quoting *Carpenter v. Herpolsheimer's Co.*, 278 Mich. 697, 698 (1937)). *See also Clark v. Kmart Corp.*, 465 Mich. 416, 421 (2001) (holding that because the grapes had been on the floor for at least an hour, "the evidence was sufficient for the jury to find that the dangerous condition that led to the injury existed for a sufficient period of time for defendants to have known of its existence").

Here, Lapczynski has not identified any evidence which suggests that Wal-Mart employees had actual notice that the floor near the pharmacy was wet and slippery at the time he fell. However, sufficient evidence exists to reflect a genuine issue of fact regarding whether Wal-Mart was on constructive notice of the unsafe condition. To begin with, Wal-Mart employees were aware of the inclement weather and of the possibility of unsafe conditions which that weather created. Store manager Bouchey testified that Wal-Mart undertook several measures to prevent falls when weather conditions warranted, and those measures were in place on the evening in question. Wal-Mart employees had placed several rugs near the entrance, positioned several caution cones, and dry mopped the entrance and pharmacy area. The most recent dry mopping occurred just over half an hour before Lapczynski fell.

Given the relatively short period of time between the dry mopping and Lapczynski's accident, a reasonable jury could conclude that Wal-Mart was not on constructive notice that the area had become unsafe once again.[6] However, a reasonable jury could also conclude that Wal-Mart should have known that the unsafe condition would arise quickly, given the severity of the weather and the amount of foot traffic. Indeed, the fact that a store employee had already dry mopped the area to alleviate an unsafe condition caused simply by foot traffic suggests that Wal-Mart was on notice that frequent mopping would be required. Viewing the facts in a light most favorable to Lapczynski, there is a genuine issue of fact regarding whether Defendant was on notice of the unsafe condition.[7]

**B.**

Wal-Mart next argues that the suit should be dismissed because the water hazards were open and obvious. The Michigan Supreme Court has articulated the scope of a premises possessor's duty to protect its invitees as follows:

> Perfection is neither practicable nor required by the law, and "[u]nder ordinary circumstances, the overriding public policy of encouraging people to take reasonable care for their own safety precludes imposing a duty on the possessor of land to make ordinary [conditions] 'foolproof.'" Thus, an integral component of the duty owed to an invitee considers whether a defect is "open and obvious." The possessor of land "owes no duty to protect or warn" of dangers that are open and obvious because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid. Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual

---

[6] Likewise, if the water on which Lapczynski slipped came from his own shoes, then Wal-Mart was not on notice of the dangerous condition. But as explained above, there is a genuine issue of fact regarding the source of the water.

[7] Wal-Mart also counterintuitively argues—in the same section where it argues it lacked notice of the condition—that it cannot be held liable because it took steps to "warn Plaintiff and anyone in the area of the *potential* of a wet floor and to guard against this potential hazard." Mot. Summ. J. at 11. The fact that Wal-Mart took steps to warn of potentially unsafe conditions suggests that it was on notice that the unsafe condition could easily and quickly arise. Wal-Mart's argument regarding its warnings thus cuts against its argument that it lacked constructive knowledge. To the extent Wal-Mart is arguing that it cannot be held liable because it took reasonable steps to warn of and alleviate the water hazards, that argument is best considered in connection with the analysis of the whether the unsafe condition was open and obvious.

inspection. This is an objective standard, calling for an examination of "the objective nature of the condition of the premises at issue."

*Hoffner v. Lanctoe*, 492 Mich. 450, 460–61 (2012) (internal citations omitted).

However, the Michigan Supreme Court has also recognized a "limited exception to the circumscribed duty owed for open and obvious hazards." *Id.* at 461. Specifically, "liability may arise when special aspects of a condition make even an open and obvious risk unreasonable. When such *special aspects* exist, a premises possessor must take reasonable steps to protect an invitee from that *unreasonable* risk of harm." *Id.* (emphasis in original).

Wal-Mart argues, first, that the water hazard which caused Lapczynski's injury was open and obvious and, second, that no special aspects existed which caused the unsafe condition to constitute an unreasonable risk of harm. Lapczynski does not argue that the unsafe condition involved any "special aspects." Accordingly, the only question is whether the unsafe condition which caused Lapczynski's injury was open and obvious.

**1.**

Wal-Mart argues that the unsafe conditions in the store was open and obvious because Lapczynski knew that the weather was snowy and rainy, the parking lot was covered in melting snow, the rugs in the vestibule were covered with water, people were tracking water into the store, and his own shoes were wet. Wal-Mart argues that these facts, on their own, are sufficient to establish that the danger was open and obvious. But Defendant alternatively argues that the existence of the caution cones, especially the one in the pharmacy area where Lapczynski slipped, made the risk of slipping open and obvious.

"The determination whether a condition poses an open and obvious danger is governed by an objective standard: 'Would an average user with ordinary intelligence have been able to discover the danger and the risk presented upon casual inspection?'" *Wellman v. Wal-Mart Stores,*

*Inc.*, 192 F. Supp. 2d 767, 770 (W.D. Mich. 2002) (quoting *Novotney v. Burger King Corp.*, 198 Mich. App. 470, 475 (1993)). Notwithstanding the objective nature of the inquiry, "a plaintiff's observations are entitled to as much consideration by [a] court as would be the observations of any other witness." *Hardison-Hannah v. Speedway LLC*, No. 15-12915, 2016 WL 4138234, at *3 (E.D. Mich. Aug. 4, 2016) (internal citations omitted). It is "well established that wintry conditions, like any other condition on the premises, may be deemed open and obvious." *Id.* at 464. However, the Michigan Supreme Court has also "'rejected the prominently cited notion that ice and snow hazards are obvious to all and therefore may not give rise to liability' under any circumstances." *Id.* at 463–64 (quoting *Quinlivan v. Great Atlantic & Pacific Tea Co., Inc.*, 395 Mich. 244, 261 (1975)).

A number of courts applying Michigan law have found that wet floors are an open and obvious condition when the weather conditions and foot traffic patterns would have led a reasonable person to be aware of the danger. For example, in *Finazzo v. Speedway LLC*, the court concluded that the wet floor was open and obvious because the weather was "nasty," the "plaintiff admitted that she would have seen the accumulation of water if she had been looking, and that her pants were soaking after the fall because of the large quantity of water upon which she slipped." *Finazzo v. Speedway LLC*, No. 11-CV-14770, 2012 WL 3966371, at *2 (E.D. Mich. Sept. 11, 2012) (internal citations omitted). Similarly, in *Shah v. Bon Ton Dept. Stores, Inc.*, the court of appeals explained that the wet floor was open and obvious because several caution cones had been placed outside the entrance and one near the place where the fall occurred, plus the plaintiff had admitted to knowing that there had been heavy rain earlier in the day. *Shah v. Bon Ton Dep't Stores, Inc.*, No. 303135, 2011 WL 6793706, at *1–2. (Mich. Ct. App. Dec. 27, 2011). In explaining the relevance of the weather, the court indicated: "A reasonable person would likely be

aware that there may be water on the floor inside a building as a result of the opening of the outer doors during the rain by persons entering and leaving the building, as well as people tracking it in on their shoes or having it drip from off their person." *Id.* at *2. But the *Shah* Court took care to explain that it also significantly relied upon the presence of the caution cones. *Id.* at n.1. In *Labadie v. Walmart Stores, Inc.*, the court of appeals concluded that the wet floor was open and obvious even in the absence of caution cones. No. 325636, 2016 WL 1688922, at *3 (Mich. Ct. App. Apr. 26, 2016). The court reasoned:

> Given the heavy rain, a reasonable person in plaintiff's position would have discerned that the entryway was wet and slippery upon a casual inspection. It was reasonable to assume that, under such weather conditions, water could accumulate in the entryway of the Wal–Mart, particularly considering the store could have a high amount of foot traffic. Moreover, plaintiff indicated that she "wasn't looking at the floor as [she] was walking" and that, after her fall, she plainly saw a "[p]robably 5, 6 feet wide" puddle on the floor that "[a]bsolutely" caused her fall.

*Id.*

The court of appeals in *Sharp v. Art Van Furniture* provided a similar rationale:

> Water in a store entryway on a slushy January day in Michigan is a hazard analogous to that presented by ice and snow. Generally, absent special circumstances or a statutory duty, the hazards presented by ice and snow are open and obvious, and do not impose a duty on the property owner to warn of or remove the hazard. Reasonable minds could not disagree that a slippery surface in a store entryway should be expected under these conditions. Even assuming there was a large amount of water on the floor, an average person of ordinary intelligence would be on notice of the possibility of water accumulation, or possibly the presence of water on his own shoes that could pose a risk of slipping.

*Sharp v. Art Van Furniture, Inc.*, No. 267810, 2006 WL 2270390, at *2 (Mich. Ct. App. Aug. 8, 2006). *See also Womack v. Wal-Mart Stores, Inc.*, No. CV 14-12615, 2016 WL 1242438, at *2 (E.D. Mich. Mar. 30, 2016), aff'd, 677 F. App'x 296 (6th Cir. 2017) (holding that the wet floor was open and obvious because it was raining outside and a caution cone had been placed near the condition) *Pingel v. Speedway LLC*, No. 13-13919, 2014 WL 4054978, at *4 (E.D. Mich. Aug. 15,

2014) (holding that the wet floor was open and obvious because a caution sign had been placed in plain view nearby and because a reasonable person would have been aware there might be water on the floor because it was raining).

On the other hand, some courts have found that issues of fact existed regarding whether a wet floor was open and obvious. For example, in *Bialick v. Megan Mary, Inc.*, the defendant admitted that there was no standing water (just a wet floor), there were no caution cones in place, the parties disputed whether a mat had been placed on the floor, and the plaintiff testified that she looked for but did not see a water hazard before falling. 286 Mich. App. 359, 363, 780 N.W.2d 599, 602 (2009). The court of appeals concluded that summary judgment for the defendant was inappropriate. *See also Hardison-Hannah*, 2016 WL 4138234, at *4 (holding that the mere existence of winter weather did not make the wet floor open and obvious as a matter of law, especially because the "water that caused the Plaintiff to slip was not near a wet-floor sign"). *Pernell v. Suburban Motors Co.*, No. 308731, 2013 WL 1748573, at *3 (Mich. Ct. App. Apr. 23, 2013) (explaining that accumulations of liquid on floors are not always observable and thus not inevitably open and obvious).

**2.**

Lapczynski argues that the cases which Wal-Mart relies upon (summarized above) all "turned on the proper placement of wet floor signs directly in the vicinity of where Plaintiff fell." Pl. Resp. M. Summ. J. at 11. He argues that critical fact is absent here because the "cone in the pharmacy area was placed against a wall and apparently not in use." *Id.*

For a number of reasons, there is no genuine issue of fact regarding whether the wet floor in Wal-Mart was open and obvious. Lapczynski himself admitted that the weather was bad on the day in question. Because the snow in the parking lot was melting, a reasonable person would have

expected the entryway to be wet. *See, e.g.*, *Labadie*, 2016 WL 1688922 at *3 ("It was reasonable to assume that, under such weather conditions, water could accumulate in the entryway of the Wal–Mart, particularly considering the store could have a high amount of foot traffic."). *See also Shah*, 2011 WL 6793706, at *2 ("A reasonable person would likely be aware that there may be water on the floor inside a building as a result of the opening of the outer doors during the rain by persons entering and leaving the building, as well as people tracking it in on their shoes or having it drip from off their person."); *Labadie v. Walmart Stores, Inc.*, 2016 WL 1688922, at *3. And, in fact, Lapczynski himself testified that the rugs in the entryway were completely saturated with water. He further admitted that he was aware that his shoes were wet from having walked through the parking lot. Given these circumstances, a reasonable person would have been on notice of the open and obvious danger of wet floors in the Wal-Mart entryway.

As Lapczynski points out, however, he did not fall in the entryway. Rather, he fell in the pharmacy area (which is around a corner from the entrance). For that reason, it is questionable whether judgment could be granted for Defendant as a matter of law based simply on the weather, water-saturated entryway, and the foot traffic patterns. Most of the cases (identified above) which conclude that a water hazard was open and obvious because of the weather involved slip and falls near the entrance. The further the water hazard is from the entrance, the more speculative the conclusion that a reasonable person would have foreseen the risk of slipping on a wet spot. At the same time, the condition of the entryway at the very least would have put a reasonable person on notice that water was being tracked *into* the store (not just into the entryway). If the weather conditions and state of the entryway were the only evidence which Wal-Mart relied upon, summary judgment would likely be inappropriate.

But Defendant also relies heavily upon the existence of two caution cones. The first caution cone was placed beside the entrance and blocked on one side by the door and the other by a crate. As explained above, that caution cone would not have put a reasonable person on notice of unsafe conditions because a person entering the store was unlikely to see the cone. But the second cone was placed approximately ten feet from where Lapczynski. As described above, a person walking towards the pharmacy after entering the store (like Lapczynski) would have seen the cone directly in front of them.

"The proper display of a wet floor sign makes the danger associated with a wet floor open and obvious as a matter of law, and is in fact why such signs are used." *Finazzo*, 2012 WL 3966371, at *3. Accordingly, the presence of the second caution cone (close beside the spot on the floor where Lapczynski fell) is arguably sufficient to justify judgment for Wal-Mart on its own. Nevertheless, Lapczynski argues that the second caution cone was ineffective because it was "placed against a wall and apparently not in use." Pl. Resp. Mot. Summ. J. at 11. That assertion is based entirely on Lapczynski's (post-hoc) characterization of the caution cone. It is true that the cone in question was placed beside the wall, not in the middle of the walkway. But the cone would have been fully obvious and visible to anyone walking towards the pharmacy from the entrance. And the cone's position was immediately adjacent to the walkway. If Lapczynski had not fallen, he would have passed within less than five feet from the cone. As it happened, Lapczynski slipped and fell approximately ten feet from the cone. Given Lapczynski's unobstructed view of the cone, its positioning immediately adjacent to the walkway, and its proximity to the spot where Lapczynski fell, the cone comes close to justifying judgment for Wal-Mart by itself. Nevertheless, viewing all evidence in a light most favorable to Lapczynski, a reasonable jury considering only the cone could perhaps conclude that it did not put customers on notice of the dangerous condition.

However, when the inclement weather, condition of the entrance, foot traffic patterns, and placement of the caution cone are all considered together, there can be no doubt that the unsafe condition was open and obvious. As explained above, a reasonable person approaching the entrance would have been on notice of the unsafe conditions created by the melting snow and foot traffic. That notice and resulting awareness of the possibility of slippery floors would only have increased after the person entered the entryway and observed the condition of the two rugs. At that point, the reasonable person entering the store would know that customers were tracking in a large amount of water and that a significant portion of that water was making its way into the store itself. When that person (already on notice of the potentially unsafe conditions caused by the water) began walking towards the pharmacy area and spotted the caution cone placed adjacent to the walkway, they would have been placed on further notice that the water hazard extended from the entrance to the pharmacy area. Given this confluence of factors, the risk of slipping on water in the pharmacy area would have been open and obvious to a reasonable person.

Lapczynski spends considerable time arguing that Wal-Mart could and should have taken more significant steps to prevent wet spots within the store. *See* Pl. Resp. M Summ. J. at 8–9 (faulting Defendant for failing to replace the wet rugs, having insufficient fans, and placing the cones in less than optimal locations). And it is undoubtedly true that additional steps *could* have been taken which *might* have prevented the unfortunate incident which gives rise to this suit. But, as the Michigan Court of Appeals has explained, "the analysis whether a danger is open and obvious does not revolve around whether steps could have been taken to make the danger more open or more obvious. Rather, the equation involved is whether the danger, as presented, is open and obvious." *Novotney*, 198 Mich. App. at 474–75. Here, the danger was open and obvious and

so the additional preventative measures which Wal-Mart may have taken are not relevant to Lapczynski's claim. Defendant's motion for summary judgment will be granted.

**IV.**

Accordingly, it is **ORDERED** that Defendant Wal-Mart's motion for summary judgment, ECF No. 15, is **GRANTED.**

It is further **ORDERED** that the Plaintiff Lapczynski's complaint, ECF No. 1, is **DISMISSED.**

Dated: April 20, 2018                s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 20, 2018.

s/Kelly Winslow
KELLY WINSLOW, Case Manager

---